**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Holding a Criminal Term
Grand Jury Sworn in on August 11, 2021

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Grand Jury Original** |
| | : | |
| | : | |
| **v.** | : | **VIOLATIONS:** |
| | : | |
| **MARTIN KAO,** | : | **18 U.S.C. § 371** |
| | : | **(Conspiracy)** |
| | : | |
| **LAWRENCE "KAHELE" LUM KEE,** | : | **52 U.S.C. §§ 30122, 30109 and 2** |
| | : | **(Contributions in the Name of Another)** |
| | : | |
| **and CLIFFORD CHEN,** | : | **52 U.S.C. §§ 30119, 30109 and 2** |
| | : | **(Contributions by Government** |
| | : | **Contractors)** |
| | : | |
| | : | **18 U.S.C. §§ 1001 and 2** |
| | : | **(False Statements)** |
| | : | |
| **Defendants.** | : | |

**INDICTMENT**

The Grand Jury charges that at all times material to this indictment, on or about the dates stated below:

**Introduction**

*Relevant Individuals and Entities*

1.    Defendant MARTIN KAO was the President and CEO of Company A.

2.    Company A was based in Hawaii and operated additional offices in Maine, Washington, D.C., Rhode Island, Michigan, Oklahoma, Kansas, and South Carolina.  It designed and analyzed ship hull forms, ocean structures, underwater lifting bodies, and coupled hydrodynamic systems.  Company A was a federal contractor servicing contracts for the U.S.

Department of Defense.

3.      Defendant LAWRENCE LUM KEE was Company A's Accountant.

4.      Defendant CLIFFORD CHEN was Company A's Chief Financial Officer.

5.      The Society of Young Women Scientist and Engineers (SYWSE) was a limited liability corporation incorporated in Hawaii on November 26, 2019.

6.      Individual A was KAO's spouse and the registered agent and manager for the SYWSE.

7.      Candidate A was a candidate for the office of United States Senator, with a primary election on July 14, 2020, and a general election on November 3, 2020.

8.      Campaign Committee A was Candidate A's authorized federal campaign committee.

9.      Political Committee A was registered with the Federal Election Commission ("FEC") as an independent expenditure–only political committee, also known as a "SuperPAC." Political Committee A made expenditures in support of Candidate A.

*The Election Act*

10.     The Federal Election Campaign Act of 1971, as amended, Title 52, United States Code, § 30101, *et seq.* ("Election Act"), imposed financial limits in the election of candidates for federal office, including the office of United States Senator, and provided for public disclosure of the financing of federal election campaigns, as follows:

a.      The Election Act limited the amount and sources of money that may be contributed to a federal candidate or a federal candidate's authorized committee. The Election Act also limited the sources of money that may be contributed to a federal independent expenditure–only political committee.

2

b.      For the 2020 election cycle, the Election Act limited primary and general election campaign contributions to $2,800 per election, for a total of $5,600, from any one individual to any one federal candidate.

c.      The Election Act prohibited a person from making a contribution in the name of another person, including by giving funds to a "straw" or "conduit" contributor for the purpose of having the straw donor or conduit pass the funds on to a federal candidate as his or her own contribution. The Election Act also prohibited a person from knowingly permitting his name to be used to effect such a conduit contribution.

d.      The Election Act prohibited federal government contractors from making contributions, or from promising to make any such contribution, to a federal candidate or political committee, including SuperPACs, or to any person for any political purpose or use.

11.    The FEC was an agency of the United States, located in Washington, D.C., with jurisdiction to administer and enforce the Election Act. The FEC was responsible for receiving and making available to the public specific, accurate information about the amounts and sources of contributions to federal candidates and political committees.

12.    The Election Act and the FEC required authorized campaign committees and independent expenditure-only political committees to file periodic reports of receipts and disbursements identifying, among other things, each person that made a contribution to such committee during the relevant reporting period whose contribution or contributions had an aggregate amount or value in excess of $200 within, respectively, the election cycle or the calendar year, together with the date and the amount of any such contribution.

## COUNT ONE
### (Conspiracy)

13.     Paragraphs 1 through 12 are realleged and incorporated herein by reference.

14.     From July 1, 2019, through March 27, 2020, in the District of Columbia and elsewhere, the defendants,

**MARTIN KAO,**
**CLIFFORD CHEN, and**
**LAWRENCE LUM KEE**

with others known and unknown, did knowingly conspire, confederate, and agree together and with each other:

a.      To defraud the United States by impairing, obstructing, and defeating the lawful functions of the FEC;  and,

b.      To commit one or more of the following offenses against the United States:

i.      to knowingly and willfully make contributions in the name of another person and permit one's name to be used to effect such contributions, and cause another to accept contributions made by one person in the name of another person, which contributions aggregated $25,000 or more in calendar year 2019, in violation of 52 U.S.C. §§ 30109(d)(1)(A)(i) and 30122; and,

ii.      to knowingly and willfully make, and cause to be made, directly and indirectly to Campaign Committee A and Political Committee A contributions of money by persons having entered into a contract with the United States and a department and agency thereof for the rendition of personal services and the furnishing of material, supplies, and equipment to the United States and its departments and agencies, for which Congress had appropriated funds and which had commenced but on which performance was not complete, which contributions

aggregated $25,000 or more in calendar year 2019, in violation of 52 U.S.C. §§ 30109(d)(1)(A)(i) and 30119.

### Purposes of the Conspiracy

15.     A purpose of the conspiracy was for the conspirators and Company A to attempt to gain favor with Candidate A by making unlawful, excessive campaign contributions to Campaign Committee A and Political Committee A through conduits and with federal contractor funds.

16.     A purpose of the conspiracy was to conceal the true source of the unlawful campaign contributions orchestrated by KAO, LUM KEE, and CHEN.

### Manner and Means

17.      The conspiracy was carried out through the following manner and means, among others:

  a.     After the conspirators had contributed the maximum lawful amounts to Campaign Committee A, they made additional, unlawful contributions;

  b.     The conspirators used Company A corporate credit cards to make unlawful contributions;

  c.     The conspirators used conduits to disguise the true source of unlawful contributions;

  d.     The conspirators created the SYWSE, a shell company, to disguise the source of unlawful contributions;

  e.     The conspirators used prohibited federal contractor funds to make unlawful contributions;

  f.     The conspirators fabricated false justifications for payments to conduits;

  g.     The conspirators caused Campaign Committee A and Political Committee

A to file false reports with the FEC; and,

       h.     The conspirators obstructed the FEC's lawful function of providing the public with accurate information about the source of the campaign contributions.

### Overt Acts

*KAO Family Conduit Contributions*

18.     After KAO and his spouse reached the lawful limit for contributions to Campaign Committee A, KAO devised and executed a plan for multiple relatives to make unlawful conduit contributions using KAO's money, as follows.

19.     By May 31, 2019, both KAO and Individual A had met or exceeded the maximum allowable contribution limits to Campaign Committee A for the primary and general elections.

20.     On July 1, 2019, KAO gave money to six of his relatives—Individual B, Individual C, Individual D, Individual E, Individual F, and Individual G—so that they could make conduit political contributions to Campaign Committee A, as directed by KAO.

21.     On July 1, 2019, KAO gave Individual B $5,200 by check drawn from KAO's personal bank account.

22.     On July 1, 2019, KAO gave Individual C, Individual D, Individual E, Individual F, and Individual G each $5,600 by checks drawn from KAO's personal bank account.

23.     On August 2, 2019, Individual G sent a file titled, "[Campaign Committee A] Contribution Form.pdf" to KAO by email. The file contained Individual G's contribution form to Campaign Committee A, which explicitly stated that Individual G's signature on the form "verifies that this contribution represents my/our personal funds" and advised Individual G of the applicable contribution limits and that contributions from corporations and federal government contractors were prohibited. In the body of this email, Individual G wrote, "All good? wasn't sure if I filled

6

it out right." KAO responded by email the same day, "All good! Thanks!"

24.     On August 18, 2019, Individual B made conduit contributions to Campaign Committee A using KAO's funds. In making this contribution, Individual B certified that the contributions represented personal funds and were not drawn from an account maintained by an incorporated entity or other prohibited sources.

25.     On August 18, 2019, Individual C made conduit contributions to Campaign Committee A using KAO's funds. In making this contribution, Individual C certified that the contributions represented personal funds and were not drawn from an account maintained by an incorporated entity or other prohibited sources.

26.     On August 18, 2019, Individual D made conduit contributions to Campaign Committee A using KAO's funds. In making this contribution, Individual D certified that the contributions represented personal funds and were not drawn from an account maintained by an incorporated entity or other prohibited sources.

27.     On August 18, 2019, Individual E made conduit contributions to Campaign Committee A using KAO's funds. In making this contribution, Individual E certified that the contributions represented personal funds and were not drawn from an account maintained by an incorporated entity or other prohibited sources.

28.     On August 18, 2019, Individual F made conduit contributions to Campaign Committee A using KAO's funds. In making this contribution, Individual F certified that the contributions represented personal funds and were not drawn from an account maintained by an incorporated entity or other prohibited sources.

29.     On August 18, 2019, Individual G made conduit contributions to Campaign Committee A using KAO's funds. In making this contribution, Individual G certified that the

contributions represented personal funds and were not drawn from an account maintained by an incorporated entity or other prohibited sources.

30.     On September 19, 2019, Individual G texted KAO to inform KAO that Individual G's bank had paused his refinance because it wanted information about the $5,600 he had been provided by KAO.  Individual G wrote in a text, "I just told them it's rental income from a condominium we own and that you your company manages. Im thinking I can just draw up some kind of payment letter, from you or [Company A], that says payment for rental income… what do you think?" KAO responded, "Ok. Can list me as the point of contact if they need to verify."

31.     On October 15, 2019, Campaign Committee A reported to the FEC the following false information about these contributions:

| Date | Contributor | Amount |
|---|---|---|
| August 18, 2019 | Individual B | $5200 (One contribution of $2,800 and one contribution of $2,400) |
| August 18, 2019 | Individual C | $5600 (Two contributions of $2,800) |
| August 18, 2019 | Individual D | $5600 (Two contributions of $2,800) |
| August 18, 2019 | Individual E | $5600 (Two contributions of $2,800) |
| August 18, 2019 | Individual F | $5600 (Two contributions of $2,800) |
| August 18, 2019 | Individual G | $5600 (Two contributions of $2,800) |

*Chen and Lum Kee Family Conduit Contributions*

32.     KAO, CHEN, and LUM KEE also devised and executed a plan for CHEN, LUM KEE, and relatives of CHEN and LUM KEE to make unlawful contributions to Campaign Committee A using Company A's federal contracting funds, as follows.

33.     On September 16, 2019, KAO sent an email from his Company A business email

account to Campaign Committee A's Director of Finance, stating in part, "We are here to help anyway we can … financially or whatever." The campaign representative reminded KAO that he had already contributed the maximum allowable amount, but wrote in part, "if you have friends or family members that would be willing to donate please don't hesitate to send them my way." KAO responded, "[j]ust want to let you know, you're going to see two more max out donation of $5,600/each come in later today." KAO first indicated that the two contributions would come from Company A's Chief Operating Officer and KAO's Company A personal assistant. Hours later, he advised that Individual H and Individual I—relatives of CHEN and LUM KEE, respectively—would instead make the contributions.

34. On September 17, 2019, KAO sent an email to CHEN and LUM KEE. The email subject line was, "Let's Discuss in person," and the email included only an internet address associated with contributions to Campaign Committee A.

35. The same day, CHEN and LUM KEE each used their Company A corporate credit cards—paid for by funds drawn from a bank account that received payment for Company A's federal government contracts—to make $5,600 contributions to Campaign Committee A. CHEN and LUM KEE shared proof of their contributions as follows:

a. CHEN forwarded KAO and LUM KEE a receipt for a $5,600 contribution made by CHEN to Campaign Committee A. The address listed for the contribution was the address for Company A's office, and the email listed for the contribution was CHEN's Company A business email address. On September 17, 2019, KAO responded to CHEN and LUM KEE and said, "Kahele: Please do one also for $5,600 on your Amex and send me confirmation. Thx."

b. LUM KEE forwarded KAO and CHEN a receipt for a $5,600 contribution made by LUM KEE to Campaign Committee A. The email was addressed to "Lawrence," the address listed

for the contribution was the address for Company A's office, and the email listed for the contribution was LUM KEE's Company A business email address.  In this email, LUM KEE wrote, "See below.  Thanks."

36.     On September 25, 2019, CHEN forwarded to LUM KEE the email that KAO had sent CHEN and LUM KEE on September 17, with the internet address for contributions to Campaign Committee A.

37.     On September 26, 2019, Company A's treasurer signed sequential checks to CHEN and LUM KEE from the Company A general account. The check to CHEN was for $6,000 and the check to LUM KEE was for $5,218.88.  LUM KEE and CHEN cashed the checks the same day.

38.     On September 26, 2019, a contribution in the name of Individual I was made to Campaign Committee A.

39.     On September 26, 2019, a contribution in the name of Individual H was made to Campaign Committee A.

40.     Also on September 26, 2019, LUM KEE forwarded a receipt from Campaign Committee A for a $5,600 conduit contribution made by Individual I from LUM KEE's personal email address to LUM KEE's Company A business email address.

41.     On September 27, 2019, CHEN deposited $5,600 cash into his personal bank account.

42.     On October 1, 2019, CHEN wrote a $5,600 check from the same account to Individual H. The check was used as a credit towards the balance of a credit card in Individual H's name used to make a conduit contribution to Campaign Committee A.

43.     On October 15, 2019, Campaign Committee A reported to the FEC the following false information about these contributions:

| Date | Contributor | Amount |
|------|-------------|--------|
| September 17, 2019 | Clifford CHEN | $5,600 (Two contributions of $2,800) |
| September 17, 2019 | Lawrence LUM KEE | $5,600 (Two contributions of $2,800) |
| September 26, 2019 | Individual H | $5,600 (Two contributions of $2,800) |
| September 26, 2019 | Individual I | $5,600 (Two contributions of $2,800) |

*SYWSE Contribution*

44.     KAO, CHEN, and LUM KEE further devised and executed a plan to create a shell company—SYWSE—through which to funnel an unlawful contribution of $150,000 of Company A's federal contractor funds to Political Committee A, as follows.

45.     On November 21, 2019, LUM KEE sent an email to KAO and CHEN's Company A accounts with the subject, "New LLC." It stated, "Looks like we can setup a new LLC Pretty vaguely. Let me know who you want to list as the registered agent, manager and the address to use and I can get started when you are read. Thanks." KAO responded in part, "Name of LLC: [SYWSE]."

46.     On November 22, 2019, KAO sent an email with the title "[Political Committee A] Good to Go," to CHEN and LUM KEE, stating, "Ok, Everyone is okay with this. Please proceed with setting up. Thanks!"

47.     On November 26, 2019, KAO caused his Company A personal assistant to open a P.O. Box in the name of SYWSE in Honolulu, Hawaii. LUM KEE sent an email to KAO and CHEN stating, in part, "[KAO's Company A personal assistant] obtained PO box. Once obtained, I will fill in address in the attached Operating Agreement and file Articles of Organization, obtain FEIN number."

48.     Also on November 26, 2019, SYWSE was formed as a limited liability corporation in Hawaii, using the same P.O. Box as its mailing address.  Individual A was named as SYWSE's registered agent and manager.

49.     In December 2019, KAO met with a representative of Political Committee A in Washington, D.C., to discuss a forthcoming contribution from SYWSE.

50.     On December 26, 2019, LUM KEE wrote a check for $150,000 from Company A's corporate account to SYWSE.

51.     On December 27, 2019, the check was deposited into SYWSE's checking account. This $150,000 constituted SYWSE's only funds at the time.

52.     The same day, KAO caused SYWSE to make a $150,000 contribution to Political Committee A by check.  KAO originally signed the check, but it was rejected because he was not an authorized signatory on the account.  Individual A then signed the check, and Political Committee A received the $150,000 contribution in Washington, DC.

53.     On December 31, 2019, Political Committee A reported the contribution from SYWSE to the FEC.

54.     On February 3, 2020, the same day that public reporting of allegations that SYWSE had been used to make illegal campaign contributions, KAO caused his Company A personal assistant to close the P.O. Box for the SYWSE.

(In violation of Title 18, United States Code, Section 371)

## COUNT TWO
### (Conduit Contributions)

55.     The allegations contained in Paragraphs 1 through 12 and 18 through 54 of this Indictment are realleged and incorporated herein by reference.

56.     From November 26, 2019, through February 3, 2020, in the District of Columbia

and elsewhere, the defendants,

**MARTIN KAO,**
**CLIFFORD CHEN, AND**
**LAWRENCE LUM KEE**

did knowingly and willfully make contributions to Political Committee A in the name of another

person, and knowingly and willfully permitted SYWSE's name to be used to effect such

contributions, and did knowingly and willfully cause Political Committee A to accept contributions

made by one person in the name of another person, which aggregated $25,000 or more in calendar

year 2019.

(In violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(A)(i); and Title
18, United States Code, Section 2)

## COUNT THREE
### (Government Contractor Contributions)

57.     The allegations contained in Paragraphs 1 through 12 and 18 through 54 of this

Indictment are realleged and incorporated herein by reference.

58.     From November 26, 2019, through February 3, 2020, in the District of Columbia

and elsewhere, the defendants,

**MARTIN KAO,**
**CLIFFORD CHEN, AND**
**LAWRENCE LUM KEE**

did knowingly and willfully make, and cause to be made, directly and indirectly, to Political

Committee A contributions of money by persons having entered into a contract for the rendition

of personal services and the furnishing of any material, supplies, and equipment to the United

States and its departments and agencies, for which Congress had appropriated funds and which

had commenced but on which performance was not complete, which aggregated $25,000 or more

in calendar year 2019.

13

(In violation of Title 52, United States Code, Sections 30119 and 30109(d)(1)(A)(i); and Title 18, United States Code, Section 2)

## COUNT FOUR
### (False Statements)

59.     The allegations contained in Paragraphs 1 through 12 and 18 through 54 of this Indictment are realleged and incorporated herein by reference.

60.     On August 18, 2019, in the District of Columbia and elsewhere, the defendant,

**MARTIN KAO**

did knowingly and willfully cause the submission of a material false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the government of the United States; that is, KAO caused Campaign Committee A to falsely record in a report to the Federal Election Commission dated October 15, 2019, that Individual B, Individual C, Individual D, Individual E, Individual F and Individual G each contributed a total of $5,600 when the contributions actually came from someone other than Individual B, Individual C, Individual D, Individual E, Individual F and Individual G.

(In Violation of Title 18, United States Code, Sections 1001 and 2)

## COUNT FIVE
### (False Statements)

61.     The allegations contained in Paragraphs 1 through 12 and 18 through 54 of this Indictment are realleged and incorporated herein by reference.

62.     On December 27, 2019, in the District of Columbia and elsewhere, the defendant,

**MARTIN KAO**

did knowingly and willfully cause the submission of a material false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the government of the United States; that is, KAO caused Political Committee A to falsely record in a

report to the Federal Election Commission dated January 31, 2020, that the SYWSE contributed

$150,000 to Political Committee A when the contribution actually came from someone other than

the SYWSE.

(In Violation of Title 18, United States Code, Sections 1001 and 2)

A TRUE BILL:

FOREPERSON

COREY
AMUNDSON

Digitally signed by COREY
AMUNDSON
Date: 2022.02.09 13:19:01 -05'00'

COREY R. AMUNDSON
CHIEF, PUBLIC INTEGRITY SECTION

MATTHEW M. GRAVES
ATTORNEY FOR THE UNITED STATES
IN AND FOR THE DISTRICT OF COLUMBIA