UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.:** |
| v. | : | |
| **MARTIN KAO,** | : | |
| Defendant. | : | |

## STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

Defendant MARTIN KAO agrees to admit guilt and enter a plea of guilty to the Counts One, Two, Four and Five of the Indictment, which charges Defendant KAO with Conspiracy (Count One), Conduit Contributions and Aiding and Abetting (Count Two), and False Statements (Counts Four and Five). Pursuant to Federal Rule of Criminal Procedure 11, The Government, and Defendant Kao, with concurrence of his attorney, agree and stipulate as follows:

### Background

1. Defendant MARTIN KAO was the President and CEO of Company A ("Company A").

2. Lawrence Lum Kee was Company A's Controller and accountant.

3. Clifford Chen was Company A's Chief Financial Officer.

4. Company A was based in Hawaii and operated additional offices in Maine, Virginia, Rhode Island, Michigan, Oklahoma, Kansas, and South Carolina. It performed a variety of functions for the Department of Defense, Office of Naval Research and was a federal contractor servicing contracts for the U.S. Department of Defense. On or about August 7, 2019, Company A received a Department of Defense contract worth $8,000,000 for advanced hull planning research.

1

5. The Society of Young Women Scientist and Engineers LLC (SYWSE), was a limited liability corporation incorporated in Hawaii on November 26, 2019. On March 24, 2020, it changed its name to Society of Young Women Scientists and Engineers LLC.

6. Individual A is KAO's spouse and was listed as the registered agent and manager for the SYWSE.

7. Candidate A was a candidate for the office of United States Senate, with a primary election on July 14, 2020, and a general election on November 3, 2020.

8. Campaign Committee A was Candidate A's authorized federal campaign committee.

9. Political Committee A was registered with the Federal Election Commission ("FEC") as an independent expenditure-only political action committee, also known as a "Super PAC." Political Committee A made expenditures in support of Candidate A.

10. Defendant KAO is aware that the FEC requires authorized campaign committees and Super PACs to report accurate information about contributions and disbursements to the FEC.

11. Defendant KAO is aware that the FEC enforces limitations on the amount and sources of money that may be contributed by an individual to a federal candidate or a federal candidate's authorized committee.

12. Defendant KAO is aware that the FEC enforces limits on the sources of money that may be contributed to a federal independent expenditure-only political action committee.

13. Defendant KAO is aware that for the 2020 election cycle, the maximum allowable contribution from a person to a federal candidate's authorized campaign committee was $2,800 per election (primary and general), for a total of $5,600 from any one individual to any one federal candidate.

14. Defendant KAO is aware that government contractors, such as Company A, are presently prohibited from using the proceeds of their government contracts for contributions to authorized campaign committees and federal independent expenditure-only political committees.

### KAO Family Conduit Contributions

15. After KAO and Individual A reached the lawful limit for contributions to Campaign Committee A, KAO devised and executed a plan for multiple relatives to make unlawful conduit contributions using KAO's money, as follows.

16. By May 31, 2019, both KAO and Individual A had met or exceeded the maximum allowable contribution limits to Campaign Committee A for the primary and general elections.

17. On July 1, 2019, KAO gave money to six of his relatives—Individual B, Individual C, Individual D, Individual E, Individual F, and Individual G—so that they could make conduit political contributions to Campaign Committee A, as directed by KAO.

18. On July 1, 2019, KAO gave Individual B $5,200 by check drawn from KAO's personal bank account.

19. On July 1, 2019, KAO gave Individual C, Individual D, Individual E, Individual F, and Individual G each $5,600 by checks drawn from KAO's personal bank account.

20. On August 2, 2019, Individual G sent a file titled, "[Campaign Committee A] Contribution Form.pdf" to KAO by email. The file contained Individual G's contribution form to Campaign Committee A, which explicitly stated that Individual G's signature on the form "verifies that this contribution represents my/our personal funds" and advised Individual G of the applicable contribution limits and that contributions from corporations and federal government contractors were prohibited. In the body of this email, Individual G wrote, "All good? wasn't sure if I filled it out right." KAO responded by email the same day, "All good! Thanks!"

21. On August 18, 2019, Individual B made conduit contributions to Campaign Committee A using KAO's funds. In making this contribution, Individual B certified that the contributions represented personal funds and were not drawn from an account maintained by an incorporated entity or other prohibited sources.

22. On August 18, 2019, Individual C made conduit contributions to Campaign Committee A using KAO's funds. In making this contribution, Individual C certified that the contributions represented personal funds and were not drawn from an account maintained by an incorporated entity or other prohibited sources.

23. On August 18, 2019, Individual D made conduit contributions to Campaign Committee A using KAO's funds. In making this contribution, Individual D certified that the contributions represented personal funds and were not drawn from an account maintained by an incorporated entity or other prohibited sources.

24. On August 18, 2019, Individual E made conduit contributions to Campaign Committee A using KAO's funds. In making this contribution, Individual E certified that the contributions represented personal funds and were not drawn from an account maintained by an incorporated entity or other prohibited sources.

25. On August 18, 2019, Individual F made conduit contributions to Campaign Committee A using KAO's funds. In making this contribution, Individual F certified that the contributions represented personal funds and were not drawn from an account maintained by an incorporated entity or other prohibited sources.

26. On August 18, 2019, Individual G made conduit contributions to Campaign Committee A using KAO's funds. In making this contribution, Individual G certified that the contributions represented personal funds and were not drawn from an account maintained by an

incorporated entity or other prohibited sources.

27. On September 19, 2019, Individual G texted KAO to inform KAO that Individual G's bank had paused his refinance because it wanted information about the $5,600 he had been provided by KAO. Individual G wrote in a text, "I just told them it's rental income from a condominium we own and that you your company manages. Im thinking I can just draw up some kind of payment letter, from you or [Company A], that says payment for rental income… what do you think?" KAO responded, "Ok. Can list me as the point of contact if they need to verify."

28. On October 15, 2019, because of KAO's conduct, Campaign Committee A reported to the FEC the following false information about these contributions:

| Date | Contributor | Amount |
| --- | --- | --- |
| August 18, 2019 | Individual B | $5200 (One contribution of $2,800 and one contribution of $2,400) |
| August 18, 2019 | Individual C | $5600 (Two contributions of $2,800) |
| August 18, 2019 | Individual D | $5600 (Two contributions of $2,800) |
| August 18, 2019 | Individual E | $5600 (Two contributions of $2,800) |
| August 18, 2019 | Individual F | $5600 (Two contributions of $2,800) |
| August 18, 2019 | Individual G | $5600 (Two contributions of $2,800) |

**Chen and Lum Kee Family Conduit Contributions**

29. KAO, Chen, and Lum Kee also devised and executed a plan for Chen, Lum Kee, and relatives of Chen and Lum Kee to make unlawful contributions to Campaign Committee A using Company A's federal contracting funds, including, but not limited to, as follows.

30. On September 16, 2019, KAO sent an email from his Company A business email account to Campaign Committee A's Director of Finance, stating in part, "We are here to help

anyway we can … financially or whatever." The campaign representative reminded KAO that he had already contributed the maximum allowable amount, but wrote in part, "if you have friends or family members that would be willing to donate please don't hesitate to send them my way." KAO responded, "[j]ust want to let you know, you're going to see two more max out donation of $5,600/each come in later today." KAO first indicated that the two donations would come from Company A's Chief Operating Officer and KAO's Company A personal assistant. Hours later, he advised that Individual H and Individual I—relatives of Chen and Lum Kee, respectively—would instead make the contributions.

31.     On September 17, 2019, KAO sent an email to Chen and Lum Kee. The email subject line was, "Let's Discuss in person," and the email included only an internet address associated with donations to Campaign Committee A.

32.     On September 17, 2019, KAO, Chen and Lum Kee discussed, in person, making conduit contributions to Campaign Committee A using their relatives as conduits, and agreed to do so. KAO, Lum Kee and Chen discussed the need to evade the laws limiting the source and amount of campaign contributions.

33.     The same day, Chen and Lum Kee each used their Company A corporate credit cards—paid for by funds drawn from a bank account that received payment for Company A's federal government contracts—to make $5,600 contributions to Campaign Committee A. Chen and Lum Kee shared proof of their donations as follows:

34.     Chen forwarded KAO and Lum Kee a receipt for a $5,600 contribution made by Chen to Campaign Committee A. The address listed for the contribution was the address for Company A's office, and the email listed for the contribution was Chen's Company A business email address. On September 17, 2019, KAO responded to Chen and Lum Kee and said, "Kahele:

Please do one also for $5,600 on your Amex and send me confirmation. Thx."

35. Lum Kee forwarded KAO and Chen a receipt for a $5,600 contribution made by Lum Kee to Campaign Committee A. The email was addressed to "Lawrence," the address listed for the contribution was the address for Company A's office, and the email listed for the contribution was Lum Kee's Company A business email address. In this email, Lum Kee wrote, "See below. Thanks."

36. On September 26, 2019, Company A's treasurer signed sequential checks to Chen and Lum Kee from the Company A general account. The check to Chen was for $6,000 and the check to Lum Kee was for $5,218.88.

37. On October 15, 2019, Campaign Committee A reported to the FEC the following false information about these contributions:

| Date | Contributor | Amount |
| --- | --- | --- |
| September 17, 2019 | Clifford CHEN | $5,600 (Two contributions of $2,800) |
| September 17, 2019 | Lawrence LUM KEE | $5,600 (Two contributions of $2,800) |
| September 26, 2019 | Individual H | $5,600 (Two contributions of $2,800) |
| September 26, 2019 | Individual I | $5,600 (Two contributions of $2,800) |

**SYWSE Contribution**

38. KAO, Chen, and Lum Kee further devised and executed a plan to create a shell company—SYWSE—through which to funnel an unlawful contribution of $150,000 of Company A's federal contractor funds to Political Committee A, as follows.

39. On November 21, 2019, Lum Kee sent an email to KAO and Chen's Company A accounts with the subject, "New LLC." It stated, "Looks like we can setup a new LLC Pretty vaguely. Let me know who you want to list as the registered agent, manager and the address to use and I can get started when you are read. Thanks." KAO responded in part, "Name of LLC: [SYWSE]."

7

40. On November 22, 2019, KAO sent an email with the title "[Political Committee A] Good to Go," to Chen and Lum Kee, stating, "Ok, Everyone is okay with this. Please proceed with setting up. Thanks!"

41. On November 26, 2019, KAO caused his Company A personal assistant to open a P.O. Box in the name of SYWSE in Honolulu, Hawaii. Lum Kee sent an email to KAO and Chen stating, in part, "[KAO's Company A personal assistant] obtained PO box. Once obtained, I will fill in address in the attached Operating Agreement and file Articles of Organization, obtain FEIN number."

42. Also on November 26, 2019, SYWSE was formed as a limited liability corporation in Hawaii, using the same P.O. Box as its mailing address. Individual A was named as SYWSE's registered agent and manager, and KAO signed on behalf of Individual A the organization documents.

43. In December 2019, KAO met with a representative of Political Committee A in Washington, D.C., to discuss a forthcoming contribution from SYWSE.

44. On December 26, 2019, Lum Kee wrote a check for $150,000 from Company A's corporate account to SYWSE.

45. On December 27, 2019, the check was deposited into SYWSE's checking account. This $150,000 constituted SYWSE's only funds at the time.

46. The same day, KAO caused SYWSE to make a $150,000 contribution to Political Committee A by check. KAO originally signed the check, but it was rejected because he was not an authorized signatory on the account. KAO then re-signed the check with Individual A's name, and Political Committee A received the $150,000 contribution in Washington, DC.

47. On December 31, 2019, Political Committee A reported the contribution from SYWSE to the FEC.

48. On February 3, 2020, the same day of public reporting of allegations that SYWSE had been used to make illegal campaign contributions, KAO caused his Company A personal assistant to close the P.O. Box for the SYWSE.

49. KAO agreed with Lum Kee and Chen to cause Campaign Committee A and Political Committee A to file false reports with the FEC.

50. KAO agreed with Lum Kee and Chen to obstruct the FEC's lawful function of providing the public with accurate information about the source of campaign contributions to Campaign Committee A and Political Committee A

51. KAO engaged in these activities intentionally, with the knowledge that he was circumventing laws against false statements, conduit and government contractor contributions.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY

By: /s/ *Joshua Rothstein*
      Joshua S. Rothstein
      Assistant United States Attorney
      N.Y. Bar Number 4453759
      555 4th Street, N.W., Room 5828
      Washington, D.C. 20530
      Office: 202-252-7164
      Joshua.Rothstein@usdoj.gov

      /s/ *Elizabeth Aloi*
      ELIZABETH ALOI
      Assistant United States Attorney
      N.Y. Bar Number 4457651
      555 4th Street, N.W., Room 5828
      Washington, D.C. 20530
      Elizabeth.Aloi@usdoj.gov

                                                    COREY R. AMUNDSON
                                                    Chief, Public Integrity Section
                                                    U.S. Department of Justice
                                                    Louisiana Bar No. 28865

                                                   /s/ *Lauren Castaldi*
                                                   LAUREN CASTALDI
                                                   Trial Attorney, Public Integrity Section
                                                   U.S. Department of Justice
                                                   Massachusetts Bar No. 669957
                                                   1301 New York Ave. NW
                                                   Washington, DC 20052

DATED: August  15 , 2022

10

## DEFENDANT'S ACCEPTANCE

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding these offenses. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crimes charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully.

I have read every word of this Statement of the Offense. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of the Offense, and declare under penalty of perjury that it is true and correct.

Date: 8/15/2022

Martin Kao
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of Offense and reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Statement of the Offense as true and accurate.

Date: 8/16/2022

Michelle Peterson
Shelli Peterson
Counsel for Defendant Martin Kao