## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                Plaintiff,

      vs.

MARTIN KAO - 1,

                Defendant.

_____/

CR Action
No. 1:22-048

Washington, DC
September 27, 2022

3:03 p.m.

TRANSCRIPT OF VIDEO PLEA AGREEMENT
**BEFORE THE HONORABLE CARL J. NICHOLS**
UNITED STATES DISTRICT JUDGE

APPEARANCES:

| | |
|---|---|
| **For the Plaintiff:** | **Lauren Castaldi**<br>DOJ-CRM<br>1301 New York Avenue NW, 10th Fl.<br>Washington, DC 20530<br>202-305-4495<br>**Joshua Rothstein**<br>DOJ-CRM<br>601 D Street NW<br>Washington, DC 20530<br>202-252-1900 |
| **For the Defendant:** | **Michelle Peterson**<br>FEDERAL PUBLIC DEFENDER - D.C.<br>625 Indiana Avenue, NW, Suite 550<br>Washington, DC 20004<br>202-208-7500 ext 125 |
| **Reported By:** | **LORRAINE T. HERMAN, RPR, CRC**<br>Official Court Reporter<br>U.S. District & Bankruptcy Courts<br>333 Constitution Avenue, NW<br>Room 6720-C<br>Washington, DC 20001 |

*** Proceedings recorded by stenotype shorthand and this
transcript was produced by computer-aided
transcription.

1                      **P R O C E E D I N G S**

2              **DEPUTY CLERK:**  Good afternoon, Your Honor.  This

3      is criminal case year 2022-048, *United States of America*

4      *versus Martin Kao, Defendant No. 1.*

5              Counsel, please introduce yourselves for the

6      record, beginning with the government.

7              **MS. CASTALDI:**  Good morning, Your Honor.  Lauren

8      Castaldi and Josh Rothstein for the United States -- good

9      afternoon, I'm sorry.

10             **MS. PETERSON:**  Good afternoon, Your Honor.

11     Michelle Peterson on behalf of Mr. Kao, who is present by

12     video and agrees to proceed pursuant to the CARES Act by

13     video today.

14             **THE COURT:**  Thank you for that, Ms. Peterson.

15             Mr. Kao, let me just confirm that you agree that

16     it's appropriate to proceed with this hearing by video in

17     light of the CARES Act and the COVID-19 pandemic?

18             **THE DEFENDANT:**  Yes, Your Honor.

19             **THE COURT:**  And I assume, Ms. Castaldi, the

20     government agrees it is appropriate to proceed by video

21     today as well?

22             **MS. CASTALDI:**  Yes, Your Honor.

23             I find that, because Mr. Kao, after consulting

24     with counsel, consents to proceed by video and the interests

25     of justice would be harmed by further delay and in light of

1    the CARES Act and the currently operative standing order

2    from Chief Judge Howell, it's appropriate to proceed today

3    by video.

4          Second, just by way of housekeeping, I think, it

5    isn't clear to me whether I've done this before, but I just

6    want to reiterate that, pursuant to The Due Process and

7    Protections Act, all government counsel shall review and

8    already have reviewed their disclosure obligations under

9    *Brady vs. Maryland*, and its progeny, as set forth in local

10   Criminal Rule 5(f) and comply with those provisions.

11         Failure to do so could result in dismissal of the

12   indictment, dismissal of the individual charges, exclusion

13   of government evidence or witnesses, continuances, Bar

14   discipline or any other remedy that is just under the

15   circumstances.

16         So, here's how I intend to proceed.  I will have

17   Ms. Lesley swear Mr. Kao, of course.  I will engage in a

18   colloquy to include the Rule 11 colloquy.  I will then turn

19   to the facts supporting the charges and Statement of

20   Offense.

21         Ms. Castaldi, at that point -- obviously, I have

22   the Statement of Offense and I will ask Mr. Kao about

23   them -- about it.  But at that point I will likely ask you

24   to provide for the record a brief summary of the Statement

25   of Offense and how it supports the charges here.

1          I'll then turn to the plea agreement.

2     Ms. Peterson, I'll ask you if there's anything that I

3     haven't already covered and that I won't cover by way of

4     sentencing that you would like to note of anything in

5     particular on the record that is particularly pertinent.  Of

6     course the plea agreement speaks for itself.

7          As I said, I'll then cover some sentencing

8     questions and then, assuming that all is in order, we'll

9     take the plea.  Okay?

10          With that, Ms. Lesley, could you please administer

11     the oath to Mr. Kao?

12          **DEPUTY CLERK:**  Yes, Your Honor.

13          Mr. Kao, please raise your right hand.  Do you

14     solemnly swear that you will well and truly answer all

15     questions propounded to you so help you God?

16          **THE DEFENDANT:**  I do.

17          **DEPUTY CLERK:**  Thank you.

18          **THE COURT:**  The purpose of this hearing is to

19     allow you to enter into a plea of guilty to the criminal

20     charges against you.  Because this is an important decision,

21     it is vital that you understand what rights you will give up

22     by entering a guilty plea.

23          I will ask you a series of questions to make sure

24     that your guilty plea is knowing and voluntary and with the

25     advice of your attorney.  If you don't understand any of my

1   questions, please tell me.

2          I'll try to explain things more clearly or I will

3   let you consult with Ms. Peterson.  We have the capability

4   of putting you and Ms. Peterson in a Zoom breakout room that

5   would be confidential for just the two of you.  If you don't

6   ask for clarification or such an opportunity to speak with

7   Ms. Peterson, I will assume you understand my question.

8          You are now under oath, and you are obligated to

9   answer all questions truthfully.  If you are not truthful

10  and the plea falls apart, the government may be able to use

11  some of your statements against you in a later proceeding or

12  separate prosecution for perjury or making a false

13  statement.  Do you understand all of that, Mr. Kao?

14          **THE DEFENDANT:**  Yes, Your Honor.

15          **THE COURT:**  Mr. Kao, what was your full name?

16          **THE DEFENDANT:**  Martin Y. Kao.

17          **THE COURT:**  How old are you?

18          **THE DEFENDANT:**  Forty-nine.

19          **THE COURT:**  Were you born in the United States?

20          **THE DEFENDANT:**  No, I was not.

21          **THE COURT:**  Are you a U.S. citizen?

22          **THE DEFENDANT:**  Yes, I am.

23          **THE COURT:**  Are you sick or impaired in any way

24  that could prevent you from understanding what is happening

25  here today?

1          **THE DEFENDANT:**  No, Your Honor.

2          **THE COURT:**  Ms. Peterson, do you have any reason

3     to believe Mr. Kao will be unable to understand what we will

4     be discussing today?

5          **MS. PETERSON:**  No, Your Honor.

6          **THE COURT:**  Mr. Kao, have you had enough time to

7     consult with Ms. Peterson about this matter?

8          **THE DEFENDANT:**  Um, yes, Your Honor.

9          **THE COURT:**  Is there anything that you feel like

10    you need to discuss more with Ms. Peterson?

11         **THE DEFENDANT:**  Not at this time, Your Honor.

12         **THE COURT:**  Have you received a copy of the

13    Indictment against you, which is the written -- contains the

14    written charges made against you in this matter?

15         **THE DEFENDANT:**  Yes, Your Honor.

16         **THE COURT:**  Mr. Kao, I note that you -- your video

17    appears to have disappeared.  I think that's okay.

18         **THE DEFENDANT:**  Yeah, I was going to say, can you

19    guys see me?  I was going to say, can you guys see me?  I

20    just disappeared.

21         **THE COURT:**  We cannot see you.

22         **THE DEFENDANT:**  I could try Zooming in again.

23         **THE COURT:**  Why don't we do that?

24         **THE DEFENDANT:**  Okay.

25         **DEPUTY CLERK:**  Your Honor, someone with a number

1    ending in 5797 just joined.  Could we ask who that is?

2             **THE COURT:**  Yes.  Thank you, Ms. Lesley.  Someone

3    with number 202-68 --

4             **MS. PETERSON:**  Michelle Ball [phonetic] with the

5    FBI.

6             **THE COURT:**  Thank you.  If you could mute your

7    phone.  Thank you.

8             **MS. BALL:**  Thank you.

9             **DEPUTY CLERK:**  Mr. Kao?

10            **THE DEFENDANT:**  Yes.

11            **DEPUTY CLERK:**  Okay.  Perfect.  Thank you.

12            **THE COURT:**  Yes, I can see you now, Mr. Kao.

13            **THE DEFENDANT:**  Thank you.

14            **THE COURT:**  So what I was asking you, Mr. Kao, was

15   whether you received a copy of the Indictment against you,

16   which includes the written charges made against you in this

17   matter?

18            **THE DEFENDANT:**  I have.  Yes, Your Honor.

19            **THE COURT:**  Have you had the opportunity to

20   discuss with Ms. Peterson those charges and whether you

21   should enter a plea in this case?

22            **THE DEFENDANT:**  Yes, Your Honor.

23            **THE COURT:**  Are you satisfied with the services of

24   Ms. Peterson in this matter?

25            **THE DEFENDANT:**  Yes, Your Honor.

1          **THE COURT:**  Ms. Peterson, have you had enough time

2     to review and investigate the law and facts in this case?

3          **MS. PETERSON:**  Yes, Your Honor.

4          **THE COURT:**  Mr. Kao, before I accept your plea, I

5     need to explain the rights you have in this matter and

6     confirm that you understand them.  Please listen closely.

7     And, again, please let me know if you do not understand

8     anything or need to speak with your attorney privately.

9          Of course, if for some reason you can't hear me,

10    please let me know.  I'll actually try to -- I'll go a

11    little slower just to make sure that there is no

12    technological issues.

13          I'll begin by discussing your right to a jury

14    trial and an appeal.  You understand, Mr. Kao, that you have

15    the right to plead not guilty to any offense charged against

16    you?

17          **THE DEFENDANT:**  Yes, Your Honor.

18          **THE COURT:**  Do you understand that you have a

19    right to challenge the government's case against you in a

20    jury trial where 12 citizens of the District of Columbia

21    would sit as a jury and determine whether you are guilty

22    based on evidence presented in the courtroom?

23          **THE DEFENDANT:**  Yes, Your Honor.

24          **THE COURT:**  Do you understand that, if you were to

25    go to trial, you would have the right to be represented by

1    your lawyer at that trial and at every stage of the

2    proceedings?

3                **THE DEFENDANT:**  Yes, Your Honor.

4                **THE COURT:**  Do you understand that, if you were to

5    exercise your right to a trial, you would have the right to

6    confront and cross-examine any of the government's witnesses

7    who testify against you?

8                **THE DEFENDANT:**  Yes, Your Honor.

9                **THE COURT:**  Do you understand that, if you were to

10   exercise your right to a trial, you would have the right to

11   present your own witnesses and the right to subpoena them,

12   require them to testify in your defense?

13               **THE DEFENDANT:**  Yes, Your Honor.

14               **THE COURT:**  Do you understand that at a trial you

15   would have the right to testify and present evidence on your

16   behalf but only if you wanted to; if you did not want to

17   testify or present evidence, you would not have to do so?

18               **THE DEFENDANT:**  Yes, Your Honor.

19               **THE COURT:**  Do you understand that, unless and

20   until I accept your guilty plea, you are presumed innocent

21   unless if you were to choose to go to trial, the government

22   would have the burden of proving you were guilty beyond a

23   reasonable doubt?

24               **THE DEFENDANT:**  Yes, Your Honor.

25               **THE COURT:**  Do you understand that, if you were to

1    choose to go to trial and were convicted, you would have a

2    right to appeal your conviction and to have a lawyer help

3    prepare your appeal, but that by pleading guilty you are

4    giving up many of your rights to appeal your conviction and

5    sentence with some limited exceptions?

6    **THE DEFENDANT:**  Yes, Your Honor.

7    **THE COURT:**  I'll just briefly go through those.

8    You're waiving the right to appeal your conviction.  That

9    means, for example, that you could not later try to appeal

10    your conviction and argue that the statute to which you are

11    pleading guilty is unconstitutional or that the conduct does

12    not fit within the scope of the statute.  Do you understand

13    that?

14    **THE DEFENDANT:**  Yes, Your Honor.

15    **THE COURT:**  You are also waiving the right to

16    appeal your sentence.  Again, with some limited exceptions I

17    will discuss in a moment, you cannot appeal your prison

18    term, if any, fine, forfeiture, award of restitution, term

19    or condition of supervised release, my authority to set the

20    conditions of release or how I determine your sentence.  Do

21    you understand that?

22    **THE DEFENDANT:**  Yes, Your Honor.

23    **THE COURT:**  So there are some limited exceptions

24    to the waiver of your appeal rights.  You may appeal

25    sentence if I were to sentence you above the statutory

1   maximum or above the advisory guidelines range.  Do you

2   understand that?

3          **THE DEFENDANT:**  Yes, Your Honor.

4          **THE COURT:**  You'd also have the right to appeal

5   the conviction and sentence on the basis that your lawyer

6   was ineffective.  If you were to choose to appeal on that

7   basis, you could not raise other issues to challenge your

8   conviction or sentence.  Do you understand that?

9          **THE DEFENDANT:**  Yes, Your Honor.

10          **THE COURT:**  Do you understand that you, if you

11   were to plead guilty today, would be largely giving up your

12   right to appeal your guilty plea at sentence?

13          **THE DEFENDANT:**  Yes, Your Honor.

14          **THE COURT:**  I'm going to hold up for the camera --

15   which is why I wanted to make sure we did this by video -- a

16   document that bears this caption of this case entitled

17   "Waiver of Trial by Jury."

18          Mr. Kao, is this your signature waiving your right

19   to trial by jury?

20          **THE DEFENDANT:**  Yes, Your Honor.

21          **THE COURT:**  Ms. Peterson, is there any reason that

22   your client should not waive a jury trial and his right

23   against self-incrimination as to the charge to which a

24   guilty plea will be made?

25          **MS. PETERSON:**  None that I am aware of, Your

1    Honor.

2            **THE COURT:**  Ms. Castaldi, are you aware of any

3    reason why the defendant should not waive a jury trial and

4    his right of self-incrimination as to the charge?

5            **MS. CASTALDI:**  No, Your Honor.

6            **THE COURT:**  I find that the waiver of a trial by

7    jury is knowingly and voluntarily made and it is accepted.

8    A signed waiver will be filed.

9            Mr. Kao, as I alluded to earlier, before I can

10   accept your guilty plea, I must determine that there is a

11   factual basis for it.  The government has provided a

12   document entitled "Statement of Offense" that describes what

13   the government would be prepared to prove at trial.  I'm

14   going to ask you a few questions about this document in a

15   minute.

16           Ms. Castaldi, could you summarize for the record,

17   briefly if possible -- you don't need to read the whole

18   thing -- what the government would be prepared to prove in

19   this matter?

20           **MS. CASTALDI:**  Your Honor, Martin Kao was the

21   President, CEO and owner of a defense contractor with

22   locations in Hawaii and around the United States.

23           In August of 2019, his company was awarded a

24   contract with the Department of Defense worth $8 million --

25           **MS. PETERSON:**  Your Honor, I -- oh, here, he's

1   back.  I just wanted to make sure that Mr. Kao was still

2   here and hearing this.

3            **THE DEFENDANT:**  Yes.

4            **THE COURT:**  Thank you, Ms. Peterson.

5            **MS. CASTALDI:**  All right.

6            Mr. Kao knew that there were limits on how much

7   individuals could contribute to federal -- to a federal

8   candidate for office.  He also knew that government

9   contractors were prohibited from making campaign

10  contributions in any amount to a federal candidate or to an

11  independent expenditure-only Political Action Committee or

12  Super PAC.

13           He also knew that the Federal Election Commission

14  requires campaign committees and Super PACs to accurately

15  report information about contributions and disbursements,

16  including the source of contributions.

17           Nevertheless, Mr. Kao conspired with

18  Lawrence Lum Kee, the company's comptroller and accountant,

19  and Clifford Chen, the company's CFO, to defraud the United

20  States and make conduit contributions in order to sidestep

21  limits on campaign contributions.

22           First, after he personally made a maximum amount

23  of allowable campaign contributions, Mr. Kao instructed six

24  of his relatives to make additional maximum campaign

25  contributions to the campaign committee of a candidate for

1    federal office.

2    　　　　　He then reimbursed these family members for their

3    contributions with his personal funds.  Each of these family

4    members falsely certified they had made contributions from

5    their personal funds.  And as a result of the defendant's

6    actions, the campaign falsely reported contributions came

7    from Mr. Kao's family members rather than from Mr. Kao.

8    　　　　　Second, Mr. Kao and Mr. Chen and Lum Kee devised a

9    plan to make unlawful conduit contributions using company

10   funds through Mr. Chen, Mr. Lum Kee and two of their family

11   members.  Mr. Chen and Lum Kee each made campaign

12   contributions to the campaign committee for a candidate for

13   federal office using company funds.  Their family members

14   also made contributions that were reimbursed by the company.

15   　　　　　And finally, Mr. Kao, Mr. Lum Kee and Mr. Chen

16   established a shell company, The Society of Young Women

17   Scientists and Engineers, to funnel funds from the company

18   to a Super PAC.  On the same day that The Society of Young

19   Women Scientists and Engineers was formed, Mr. Lum Kee wrote

20   a check from the contractor company for $150,000 to The

21   Society of Young Women Scientists and Engineers.

22   　　　　　Shortly thereafter, Mr. Kao signed a check from

23   The Society of Young Women Scientists and Engineers to the

24   Super PAC.  As a result of Mr. Kao's actions, he caused the

25   Super PAC to falsely report that contributions to the Super

1   PAC came from The Society of Young Women Scientists and

2   Engineers.

3          This is a brief summary of the evidence that the

4   United States would be prepared to present at trial.

5          **THE COURT:**  Thank you, Ms. Castaldi.  I'm going to

6   ask you, Mr. Kao, a few questions about the Statement of

7   Offense document that I referenced before.  I'm going to

8   first hold up the first page for the video.  This document

9   bears a case caption in this matter and it's entitled

10   "Statement of Offense in Support of a Guilty Plea."

11          Just going to hold that first page up.  And then

12   I'm going to hold the last page up, Page 11, which bears the

13   title "Defendant's Acceptance" for the record also for the

14   video.

15          Mr. Kao, have you read this document entitled

16   "Statement of Offense in Support of a Guilty Plea" and

17   discussed it with Ms. Peterson?

18          **THE DEFENDANT:**  Yes, Your Honor.

19          **THE COURT:**  Is that your signature on the last

20   page acknowledging that you have read the description of the

21   criminal conduct and fully understand it?

22          **THE DEFENDANT:**  Yes, Your Honor.

23          **THE COURT:**  Are there any corrections or changes

24   you would make to the Statement of Offense?

25          **THE DEFENDANT:**  No, Your Honor.

1          **THE COURT:**   Does the Statement of Offense truly

2     and accurately describe what you did in this case?

3          **THE DEFENDANT:**  Yes, Your Honor.

4          **THE COURT:**   Thank you.

5          Turning, as I noted before, to the plea agreement,

6     the parties have submitted a written letter outlining a plea

7     agreement in this case.  I'll hold up the first page for the

8     video for the record.  It bears the date on the first page

9     of August 10, 2022.

10         Ms. Castaldi, is this the most lenient or only, or

11    perhaps both, plea offer made to the defendant in this

12    matter?

13         **MS. CASTALDI:**  Yes, Your Honor.

14         **THE COURT:**  Mr. Kao, have you had enough time to

15    review the plea agreement and to discuss it with

16    Ms. Peterson?

17         **THE DEFENDANT:**  Yes, Your Honor.

18         **THE COURT:**  Do you understand the contents of the

19    plea agreement?

20         **THE DEFENDANT:**  Yes, Your Honor.

21         **THE COURT:**  I'm going to hold up, again, the last

22    page of this document, which is Page 11 of 11, also bearing

23    the heading "Defendant's Acceptance."  Holding that up for

24    the video.

25         Is this your signature on Page 11 of 11, Mr. Kao,

accepting and agreeing to the terms of the plea agreement?

**THE DEFENDANT:**  Yes, Your Honor.

**THE COURT:**  Ms. Peterson, as I noted before, could you state for the record any parts of the plea agreement that you think are particularly pertinent?  As I mentioned, I intend still to cover with Mr. Kao the maximum statutory penalties and then how the guidelines will work in this matter.

**MS. PETERSON:**  Your Honor, with the exception of -- I'll note even though it's a sentencing issue because it's somewhat unique, the government is agreeing not to object to this -- any sentence imposed in this case running concurrent with the sentence he anticipates receiving in Hawaii.

And in exchange for that, this plea agreement was contingent on him pleading guilty in both cases.  He has pled guilty in Hawaii.  So I think, procedurally, what will happen is he's pleading guilty here now.  He will then be sentenced in Hawaii and then come back for sentencing before Your Honor.

Other than that, I think everything else are things the Court will cover in its description of the sentencing.

**THE COURT:**  Can I ask him also, am I right, that one count of the indictment will be dismissed as well?

1    **MS. PETERSON:**  That is correct.  He's pleading

2    guilty to four of the five counts, and the other count will

3    be dismissed.

4             **MS. PETERSON:**  Thank you, Ms. Peterson.

5             Ms. Castaldi, anything the government would like

6    to note for the record?

7             **MS. CASTALDI:**  Nothing to add, Your Honor.  Thank

8    you.

9             **THE COURT:**  Thank you.

10            So, Mr. Kao, I just want to now walk through, for

11   the record, how sentencing will work in this matter.

12   Ms. Peterson obviously just described a particularly unique

13   thing about this case, which is the relationship between it

14   and the District of Hawaii.

15            What I intend to do is just cover essentially the

16   statutory maximums and then how the guidelines will work in

17   this case and sentencing will work.  Again, that's all

18   subject to what Ms. Peterson said already about the District

19   of Hawaii case.

20            So if I accept your guilty plea today, Mr. Kao,

21   the statutory penalties you face are as follows:  For the

22   charge of conspiracy in violation of 18 U.S. Code, Section

23   371, a maximum sentence of 5 years imprisonment, supervised

24   release term of not more than 3 years and a maximum fine of

25   $250,000 or twice the pecuniary gain or loss of the offense.

1          For the charge of making conduit contribution and

2     aiding and abetting in violation of 52 U.S. Code, Sections

3     30122, 30109(d)(1)(A)(1), 18 U.S. Code, Section 2, you face

4     a maximum sentence of five years imprisonment, supervised

5     release term of not more than three years and a fine of not

6     less than 300 percent of the amount involved in the

7     violation and not more than the greater of $50,000 or 1,000

8     percent of the amount involved in the violation.

9          And for the two charges of false statements in

10    violation of 18 U.S. Code, Section 1001, you face a maximum

11    sentence of five years imprisonment, supervised release term

12    of not more than three years and a maximum fine of $250,000

13    or twice the pecuniary gain or loss of the offense.  You

14    also face a special assessment of $100 per felony

15    conviction.

16          Mr. Kao, do you understand that what I just

17    listed, the maximum prison terms, supervised release, fines

18    and special assessments, those are statutory penalties that

19    apply here?

20          **THE DEFENDANT:**  Yes, Your Honor.

21          **THE COURT:**  Have you discussed those statutory

22    penalties with Ms. Peterson?

23          **THE DEFENDANT:**  Not yet but --

24          **THE COURT:**  Have you previously had the

25    opportunity to discuss the maximum statutory penalties for

1    the charges to which you will be pleading guilty?

2          **THE DEFENDANT:**  Yes, Your Honor.

3          **THE COURT:**  So those are the maximum statutory

4    penalties.  Now, I'm just going to walk through how

5    sentencing will work.  Again, this is, of course, subject to

6    what Ms. Peterson said already about the inter-relationship

7    between this case and the District of Hawaii case.

8          In deciding on a fair and appropriate sentence in

9    this case, I will have to consider certain statutory factors

10   and the sentencing guidelines, which are detailed guidelines

11   for judges to consider in determining the sentence in a

12   criminal case like this one.

13         Those guidelines set sentencing ranges for

14   specific offenses.  And although I must consult with and

15   calculate the guidelines and the range, the range is only

16   advisory not mandatory.

17         While you and your attorney may have an idea based

18   on your criminal history and the nature of the offenses here

19   of what your sentencing range may be, nothing will be

20   certain until the probation officer submits a presentence

21   report that will come to me and the government and

22   Ms. Peterson.

23         Ms. Peterson and you will then have the

24   opportunity to review it, have a chance to make changes to

25   it or object to portions of it.  At the time of sentencing,

1    I will hear from both parties, and I will have to determine

2    what your sentencing guidelines range is.

3             Do you understand, Mr. Kao, at this time at least,

4    what's contained in the plea agreement is just an estimate

5    of what the sentencing guidelines range here might be?

6             **THE DEFENDANT:**  Yes, Your Honor.

7             **THE COURT:**  Once I hear from both parties and

8    determine the appropriate sentencing guidelines range, I am

9    still permitted to impose a sentence outside the sentencing

10   range; that means I could sentence you above or below the

11   relevant range.

12            I cannot, however, sentence you to more than the

13   maximum statutory periods which I have already discussed

14   with you.  Do you understand all of that, Mr. Kao?

15            **THE DEFENDANT:**  Yes, Your Honor.

16            **THE COURT:**  And when I do that, that is when I

17   determine the appropriate sentence here, I have to consider

18   a number of statutory factors, including the nature and

19   circumstances of the offenses and your history and

20   characteristics, the need for the sentence to reflect the

21   seriousness of the offenses, to promote respect for the law,

22   to provide just punishment.

23            I have to consider the need to afford adequate

24   deterrence to criminal conduct both to you and to others.  I

25   have to consider the need to protect the public from further

1    crimes by you, and I have to consider the need to provide

2    you with any -- as necessary -- educational or vocational

3    training, medical care or other correctional treatment in

4    the most effective manner.

5         I have to consider the kinds of sentences

6    available.  I have to consider, as I already indicated, the

7    sentencing guidelines range that I calculate.  I have to

8    consider the need to avoid unnecessary sentencing

9    disparities or sentence disparities among defendants who

10   have similar records who have been found guilty of similar

11   conduct.

12        Do you understand, Mr. Kao, that I have to

13   consider all of those factors in imposing a sentence in this

14   case?

15        **THE DEFENDANT:**  Yes, Your Honor.

16        **THE COURT:**  Do you understand, as I said already,

17   that I will not be able to determine the guidelines range

18   for this case until I have received the presentence report

19   from the Probation Office and until you and your attorney

20   and the government have had the opportunity to challenge the

21   facts reported by the probation officer and the probation

22   officer's proposed estimated guidelines range?  Do you

23   understand that?

24        **THE DEFENDANT:**  Yes, Your Honor.

25        **THE COURT:**  Finally, do you also understand,

1    again, that after I decide what the guidelines range is

2    here, I still have the authority in my discretion to impose

3    a sentence that is more severe or less severe than a

4    sentence called for by the guidelines?

5              **THE DEFENDANT:**  Yes, Your Honor.

6              **THE COURT:**  Just a few more questions, Mr. Kao.

7              Do you understand that the agreement reached in

8    this case resulted from negotiations between Ms. Peterson

9    and the government?

10             **THE DEFENDANT:**  Yes, Your Honor.

11             **THE COURT:**  Has anyone forced, threatened or

12   coerced you in any way regarding your plea?

13             **THE DEFENDANT:**  No, Your Honor.

14             **THE COURT:**  Has anyone made any promises to you as

15   to what sentence I will impose in this case, if I will

16   accept your guilty plea?

17             **THE DEFENDANT:**  No, Your Honor.

18             **THE COURT:**  Has anyone made you any other promises

19   or representations beyond the ones in the plea agreement or

20   discussed today in court to induce you to give up your right

21   to a trial?

22             **THE DEFENDANT:**  No, Your Honor.

23             **THE COURT:**  And are you entering your plea today

24   voluntarily and of your own free will?

25             **THE DEFENDANT:**  Yes, Your Honor.

1      **THE COURT:**  Is there anything you don't

2  understand, Mr. Kao, about this proceeding, your plea or any

3  of the rights you are waiving?

4      **THE DEFENDANT:**  No, Your Honor.

5      **THE COURT:**  Is there anything you would like to

6  ask me or Ms. Peterson before we proceed to take the plea?

7      **THE DEFENDANT:**  No, Your Honor.

8      **THE COURT:**  Ms. Lesley, could you please take the

9  plea?

10     **DEPUTY CLERK:**  Yes, Your Honor.

11     Mr. Kao, Mr. Martin Kao in Criminal Case No.

12  22-048 in which you are charged with conspiracy to defraud

13  the United States, federal statutes, conduit contributions

14  and statements or entries generally, false statements in

15  violation of 18 U.S.C. 371, 52 U.S.C. 30122 and

16  30109(d)(1)(A)(i) and 18 U.S.C. 2 and 18 U.S.C. 1001 and 2,

17  how do you wish to plead?

18     **THE DEFENDANT:**  Guilty.

19     **DEPUTY CLERK:**  Thank you.

20     **THE COURT:**  I find, in the case of *United States*

21  *versus Kao*, that the defendant, Martin Kao, is fully

22  competent and capable of making a decision today, that he

23  understands the nature of the charges and the consequences

24  of his plea.

25     A plea of guilty is knowing and voluntary, that he

1    is acting of his own free will and that there is an adequate

2    factual basis contained in each of the essential elements of

3    the offenses.  I therefore accept the plea of guilty, and

4    Mr. Kao is now adjudged guilty of those offenses.

5            Ms. Peterson, obviously, you mentioned the

6    inter-relationship between this case and the Hawaii case.

7    Do you have -- have you either discussed with the government

8    or do have a proposal by way of next steps as to sentencing

9    here?

10           **MS. PETERSON:**  Your Honor, we have not discussed

11   it recently.

12           And frankly, I apologize, I don't know the date of

13   Mr. Kao's sentencing in Hawaii.  Mr. Kao, do you have the

14   date or does the government have the date?

15           **THE DEFENDANT:**  I believe it's January 29th or

16   something like that -- 19th, 19th, January 19th.

17           **MS. PETERSON:**  So perhaps, if we were to set this

18   down for a plea hearing in early February?

19           **THE COURT:**  Ms. Castaldi, does that make sense to

20   you as well?

21           **MS. CASTALDI:**  Yes, Your Honor.

22           **THE COURT:**  I'm looking at my calendar, Counsel.

23           Ms. Peterson, do you have a view on whether you

24   would want to conduct this sentencing by video or in person?

25           **MS. PETERSON:**  Your Honor, our preference would be

1     to do it by video since Mr. Kao is in Hawaii.

2            **THE COURT:**  Any objection from the government

3     about doing this by video?

4            **MS. CASTALDI:**  No, Your Honor.

5            **THE COURT:**  Why don't we set this matter for a

6     video sentencing on February 9th, 2023 at 3 p.m.?

7            It seems to me that that gives us, by my count,

8     three weeks between the plea in Hawaii -- excuse me.  Sorry.

9     Set this for a sentencing hearing on February 9th.  And that

10    gives us three weeks between the sentencing in Hawaii to

11    allow us to take what happens there into account.  We can do

12    it 3 p.m., February 9th, by video.

13           What I would ask is that the parties submit their

14    sentencing memoranda no later than February 20th -- excuse

15    me, February 2nd, 2023.  And that will then give us a week

16    to consider the various positions that have been taken.

17           Is that an acceptable time for everyone?

18           **MS. PETERSON:**  Yes, Your Honor.

19           **THE COURT:**  Ms. Castaldi?

20           **MS. CASTALDI:**  Yes, Your Honor.

21           **THE COURT:**  Obviously, that gives probation plenty

22    of time to prepare its report as well.

23           Are there any other topics we should discuss

24    today, Ms. Castaldi, from the government's perspective?

25           **MS. CASTALDI:**  Nothing from the government, Your

1    Honor.

2              **THE COURT:**  Ms. Peterson?

3              **MS. PETERSON:**  No, Your Honor.  Thank you.

4              **THE COURT:**  I suppose one question is, I see that

5    the government is not -- has agreed not to ask for any

6    change to Mr. Kao's bond status.  And it seems to me that I

7    don't see a reason to do so either.  So we won't touch that.

8              With that, thank you all.  I look forward to

9    seeing your briefs in early February and we will see you on

10   February 9th.  Okay?

11             **MS. PETERSON:**  Thank you, Your Honor.

12             **MS. CASTALDI:**  Thank you.

13             **THE DEFENDANT:**  Thank you, Your Honor.

14        (Proceedings concluded at 3:36 p.m.)

15

16

17

18

19

20

21

22

23

24

25

1

## C E R T I F I C A T E

2

3       I, **Lorraine T. Herman, Official Court Reporter,**

4  certify that the foregoing is a true and correct transcript

5  of the record of proceedings in the above-entitled matter.

6

7       **Please Note:**  This hearing occurred during the

8  COVID-19 pandemic and is therefore subject to the

9  technological limitations of court reporting remotely.

10

11

12

13  ____April 20, 2023_____        __/s/_____
                 **DATE**                    **Lorraine T. Herman**
14

15

16

17

18

19

20

21

22

23

24

25